UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES,

    Plaintiff,

v.

JHAMALL KESHAN MCGAUGHY,

    Defendant.
_____/

Case No. 18-cr-20206

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

**OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR BOND [84]**

**I. INTRODUCTION**

On March 27, 2018, Defendant Jhamall Keshan McGaughy (pronounced me-goi) was charged in an indictment with multiple counts of commercial sex trafficking and related interstate transportation charges, in violation of 18 U.S.C. § 1591(a)(1); and 18 U.S.C. § 2421(a), respectively. ECF No. 12. He previously made an initial appearance on the Complaint and consented to federal detention. ECF No. 10.

A First Superseding Indictment was issued on July 19, 2018, modifying only which sections of 18 U.S.C. § 1591 applied to the commercial sex trafficking charges: 18 U.S.C. §§ 1591(a)(1), (b)(1). ECF No. 20. The substance of the Government's allegations was maintained. ECF No. 84, PageID.348.

1

Following the First Superseding Indictment, Magistrate Judge David Grand denied bond to Defendant. ECF No. 35. Magistrate Judge Grand found that Defendant failed to offer sufficient evidence to rebut the presumption of detention under 18 U.S.C. § 3142(e)(3). *Id.* at PageID.125. Specifically, Magistrate Judge Grand determined that Defendant posed a danger to the community based on the nature of his offense which involves his "alleged use of drugs and violent physical assaults to keep his victims performing commercial sex acts." *Id.* Furthermore, he denoted the Government's "strong evidence" of Defendant's alleged use of violence in the instant case as well as his lengthy criminal history. *Id.* Finally, Magistrate Judge Grand weighed the significant sentence which Defendant faces if convicted. *Id.*

Since the time of his initial consent to detention in March 2018 and Magistrate Judge Grand's decision to deny bond in November 2018, the Government has filed three superseding indictments. The Fourth Superseding Indictment, filed on May 14, 2019, charged Defendant with four violations of the Controlled Substances Act, including conspiracy to distribute controlled substances—more than 100 grams of heroin and more than twenty-eight grams of crack cocaine—with co-defendant Michael Anthony Frost, 18 U.S.C. §§ 841, 846; distribution of controlled substances, 18 U.S.C. § 841; and two counts of distribution of controlled substances to pregnant individuals, 21 U.S.C. § 861(f). Defendant was also charged with six counts of

commercial sex trafficking, 18 U.S.C. §§ 1591(a)(1); (b)(1); and one count of obstruction of justice, 18 U.S.C. § 1512(c)(1), for attempting to destroy his cell phone with the intent to damage its availability in later proceedings. *See* ECF No. 65.

Presently before the Court is Defendant's Motion for Bond, filed on July 26, 2019. ECF No. 84. The Government filed a Response on August 9, 2019. ECF No. 89. A hearing on Defendant's Motion was held on September 30, 2019. For the reasons that follow, the Court will DENY Defendant's Motion [#84].

## II. FACTUAL BACKGROUND

The instant action stems from an alleged drug and prostitution enterprise in the Eastern District of Michigan and elsewhere during the latter half of 2017 and the first two months of 2018. Defendant allegedly ran this enterprise to generate demand and cash for the women working under his control as prostitutes to purchase drugs. ECF No. 65, PageID.216. He posted online advertisements for the prostitutes, including www.Backpage.com. *Id.* He set the prices, time periods, and specific sexual acts for the prostitutes' "dates." *Id.*

The enterprise moved around metro-Detroit for several months in 2017, shifting between various hotels before settling in a house on Cheyenne Street, owned by co-defendant Michael Frost, in December 2017. ECF No. 89, PageID.373. Co-defendant was a "regular supplier" of controlled substances, including heroin,

cocaine, and crack cocaine, to Defendant. ECF No. 65, PageID.216. Defendant then allegedly provided the prostitutes with access to these drugs in return for their sexual acts. ECF No. 89, PageID.373. He "controlled [the] prostitutes" by supplying drugs to them in order to "increase their dependence on the drugs, and then restricting or cutting off [their] access[.] By this means, [Defendant] kept the women working for him on the edge of being 'dopesick'[.]" ECF No. 65, PageID.216. When this control was no longer sufficient, Defendant allegedly resorted to physical violence. ECF No. 89, PageID.374. Six women reported Defendant's use of such violence. *Id.* Several other women further described being punched, raped, or witnessing other women being victimized. *Id.*

Defendant is a thirty-five-year-old native of the district. Pretrial Services Report, at 1. He has familial ties to the area, including his father, eldest child, and grandmother. *Id.* at 2. His mother and two siblings reside in Georgia. *Id.* at 1. Defendant has an employment history working as a repair technician at bowling alleys in the Detroit area. ECF No. 35, PageID.354. He claims he can procure employment at Sister's Spit Shine should he be released on bond. *Id.*

Defendant reported a substance abuse history beginning at age fourteen, including alcohol, cannabinoids, and ecstasy, to Pretrial Services. Pretrial Services Report, at 3. Defendant also has a criminal history in Michigan and Georgia. He

4

has convictions for obstructing police, four drug offenses, domestic violence, and receipt of stolen property. *Id.* at 4–6.

At the time of his arrest in the instant case, Defendant was on probation, wearing a tether, for drug offenses in Genesee County and for receiving stolen property charges out of Macomb County. ECF No. 89, PageID.379. Defendant's tether was affixed to Co-defendant's house address in Detroit: the alleged site of the drug and prostitution enterprise. *Id.* at PageID.380.

Defendant now moves this Court, pursuant to 18 U.S.C. § 3145(b), to revoke Magistrate Judge Grand's prior order of detention and to issue an order releasing him on bond pending trial, pursuant to 18 U.S.C. § 3142(a). ECF No. 84, PageID.347. First, Defendant maintains that he poses neither a danger to the community nor a risk of flight under 18 U.S.C. § 3142(c) since he has strong family ties in Michigan that can provide him with both a stable residence and an ability to reestablish employment. *Id.* at PageID.348. He emphasizes that conditions can be imposed to alleviate concerns. *Id.* Second, Defendant argues that his continued pretrial detention amounts to "punitive detention" given the delays in the prosecution of this case. *Id.* at PageID.349.

The Government represents that Magistrate Judge Grand's order indicates how strong the evidence against Defendant was at the time of the First Superseding Indictment. Since then, Defendant faces additional and more aggravated drug and

commercial sex trafficking charges, some carrying their own presumption of detention. ECF No. 89, PageID.380. The Government argues that Defendant fails to offer compelling evidence to rebut these presumptions or to assure the Court that he no longer presents a community threat or flight risk. *Id.*

### III. LEGAL STANDARDS

#### A. The Bail Reform Act

Title 18 U.S.C. § 3145(b) allows the district judge to review an order detaining a defendant. This review is a *de novo* hearing. *U.S. v. Delker*, 757 F.2d 1390, 1394 (3d Cir. 1985); *U.S. v. Jones*, 804 F.Supp. 1081 (S.D. Ind. 1992).

"The default position of the law . . . is that a defendant should be released pending trial." *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010). Generally, in order for a defendant to be detained, the Government must establish the defendant's (1) "risk of flight by a preponderance of the evidence" or (2) "dangerousness to any other person or the community by clear and convincing evidence." *United States v. Hinton*, 113 F.App'x 76, 77 (6th Cir. 2004). Under the Bail Reform Act, pretrial detention shall be ordered only if a judicial officer "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1).

There is a rebuttable presumption in favor of detention, however, for "certain, particularly dangerous defendants." *Stone*, 608 F.3d at 945. The presumption applies when a judicial officer finds there is probable cause to believe that a defendant committed a crime listed under 18 U.S.C. § 3142(e)(3). *Id.* A grand jury's indictment is sufficient to establish probable cause; the Government therefore fulfills its burden to establish a presumption in favor of detention when it presents an indictment with charges listed under § 3142(e)(3). *See United States v. Hazime*, 762 F.2d 34, 37 (6th Cir. 1985).

Once the Government satisfies this burden, the defendant may rebut the presumption by producing some evidence that "he does not pose a danger to the community or a risk of flight." *Stone*, 608 F.3d at 945 (quoting *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001)). The defendant's "burden of production" requires an introduction of "at least some evidence"; the burden is not intended to be "heavy." *Stone*, 608 F.3d at 945 (quoting *United States v. Stricklin*, 932 F.2d 1353, 1355 (10th Cir. 1991)). Even if the defendant satisfies this burden, though, the presumption does not disappear entirely, as it remains a factor to be considered among those weighed by the district court. *Stone*, 608 F.3d at 945.

Regardless of whether a presumption applies, the Government's ultimate burden is to prove that no conditions of release can assure the defendant's appearance and the community's safety. *Stone*, 608 F.3d at 946. In determining

7

whether any condition or combination of conditions exist, the district court makes its findings based on four factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger posed by the person's release. 18 U.S.C. § 3142(g). To detain a defendant pretrial on dangerousness grounds, the Government must ultimately present "clear and convincing evidence" of that defendant's dangerousness. *United States v. Alderson*, No. 18-20512, 2019 WL 926604, at *2 (E.D. Mich. Feb. 26, 2019) (quoting 18 U.S.C. § 3142(f)).

### B. Due Process

Pretrial detention violates the Fifth Amendment when it amounts to "punishment of the detainee." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). "Liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). "A government's regulatory interest in community safety can, in appropriate circumstances, outweigh an individual's liberty interest." *Id.* at 748. Whether a pretrial detention is unconstitutionally excessive is determined on a case-by-case basis. *United States v. Orena*, 986 F.2d 628, 630 (2d Cir. 1993).

The Sixth Circuit has relied on the Second Circuit's case law when addressing this issue. *See United States v. Watson*, 475 F.App'x. 598, 601 (6th Cir. 2012). The

Second Circuit identifies four factors to be considered in determining if the pretrial detention is unconstitutionally excessive: (1) the length of the detention; (2) the extent of the prosecution's responsibility for the delay of the trial; (3) the gravity of charges; and (4) the strength of the evidence upon which the detention was based. *United States v. El-Hage*, 213 F.3d 74, 79 (2d Cir. 2000).

## IV. DISCUSSION

In conducting its *de novo* review of the evidence and legal issues relevant to Defendant's Motion, the Court does not accord deference to Magistrate Judge Grand's conclusions. *United States v. Gardner*, No. 16-CR-20135, 2016 WL 2731189, at *2 (E.D. Mich. May 11, 2016). Nevertheless, Defendant gives the Court little reason to question the correctness of Magistrate Judge Grand's ruling.

### A. The Bail Reform Act

The grand jury found probable cause to indict Defendant in the Fourth Superseding Indictment for conspiracy to distribute more than 100 grams of heroin and more than twenty-eight grams of crack cocaine. ECF No. 65, PageID.218. There is therefore a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the Defendant and the safety of the community. 18 U.S.C. § 3142(e)(3)(A).

9

In weighing all four factors under § 3142(g), the Court will find that the evidence establishes by clear and convincing evidence that Defendant would pose a danger to the community if he is released.

1. **Nature and Circumstances of the Offense Charged**

The first factor the Court must consider is the nature and circumstances of the offenses charged against Defendant. Defendant is named in an eleven count Fourth Superseding Indictment. ECF No. 65, PageID.215. Defendant is charged with a serious drug trafficking offense—conspiracy to distribute more than 100 grams of heroin and more than twenty-eight grams of crack cocaine. *Id.* at PageID.218–219. Defendant allegedly used the narcotics to control addicted women and coerce them into acts of prostitution. ECF No. 89, Page.ID.378. The full extent of the alleged conspiracy is unquestionably serious.

Defendant is also charged with distributing these controlled substances. ECF No. 65, PageID.219. He allegedly recruited women who were susceptible to drug addiction to work for his enterprise so they could afford to purchase their "daily fix" from him. ECF No. 89, Page.ID.378. Defendant also purportedly distributed crack cocaine and heroin to two pregnant women. ECF No. 65, PageID.223–224.

Congress found it to be especially significant in the dangerousness analysis if charges against Defendant include a "crime of violence, a violation of section 1591[.]" 18 U.S.C. § 3142(g); *see Stone*, 608 F.3d at 947. Defendant is charged

10

with six counts of violating § 1591. ECF No. 65. The Government describes Defendant's several, "persistent episodes of violence against women" throughout the enterprise—including punching and raping a woman as punishment for keeping money from him; punching another named victim for also keeping money from him and buying drugs from a different dealer; and holding a third named victim down and injecting heroin into her neck. ECF No. 89, PageID.376.

Defendant explains that there were "no allegations of dangerous weapons, [] evidence that anyone had been threatened by [him] or feared from him if he were to be released." ECF No.84, PageID.352. The Government disputes this lack of fear, arguing that several victims have expressed "great reluctance to come forward and testify against [Defendant], due to their fear of retaliation." ECF No. 89, PageID.377. The absence of dangerous weapons and evidence that anyone feared Defendant's release fails to remove the seriousness of the charged offenses. This factor thus weighs in favor of Defendant's continued detention.

2. **Weight of the Evidence Against Defendant**

The Court must next consider the weight of the evidence against Defendant. "This factor goes to the weight of evidence of dangerousness, not the weight of the evidence of the defendant's guilt." *Stone*, 608 F.3d at 948. This analysis "deals with the factors to be considered in determining whether there are conditions which will

11

assure the appearance of the accused and safety of the community." *Hazime*, 762 F.2d at 37.

Defendant has an extensive criminal history which includes convictions for obstructing police, multiple drug offenses, domestic violence, and receipt of stolen property. Pretrial Services Report, at 4–6. Furthermore, Defendant has a record of failure to appear. *Id.* at 7. In the instant case, the Government explains that the evidence of Defendant's guilt on the drug and commercial sex trafficking charges is "overwhelming." ECF No. 89, PageID.380. It refers to phone records from Defendant, witnesses, and victims, as well as Defendant's postings on www.Backpage.com. *Id.* Defendant dismisses this support as "allegations of wrong danger based entirely on hearsay evidence" yet to be tested at trial. ECF No. 84, PageID.352. He fails to offer any contrary evidence, though.

Most notably, Defendant allegedly committed the instant offenses while he was serving probationary sentences for drug offenses in Genesee County and for receiving stolen property charges out of Macomb County. ECF No. 89, PageID.379. He argues that there are conditions that can be set for his release that would both protect the community and assure his future court appearances—including a GPS tether. Defendant was already wearing a tether during his previous probationary period, though, and it failed to prevent Defendant from allegedly committing the offenses at issue here. *Id.*

Defendant further maintains that he has "strong family ties" in the area—including a grandmother in Flint who is willing to allow Defendant to reside with her and to have "any electronic equipment necessary installed" in her home. ECF No. 84, PageID.355. He also suggests other conditions, including reporting to Pretrial Services; agreeing to restricted travel; refraining from possessing guns or drugs; and participating in home confinement with a curfew. *Id.* at PageID.354. These additional conditions, taken in their totality, could alleviate the Government's concern with Defendant's recent homelessness. ECF No. 89, PageID.379. Defendant's Pretrial Services Report also listed his unstable living situation as a reason for detention. Pretrial Services Report, at 7.

The combination of these suggested conditions, though, still fails to assure Defendant's appearance at future court proceedings, given his familial ties to Georgia and his alleged travel to other states as part of the purported commercial sex trafficking operation. Furthermore, these conditions cannot secure the safety of the community, including the witnesses in the instant case. The second factor therefore also weighs in favor of Defendant's continued detention.

3. **History and Characteristics of Defendant**

The third factor requires the Court to review the history and characteristics of Defendant, which are statutorily separated into two categories. The first category examines Defendant's "character, physical and mental condition, family ties,

employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." 18 U.S.C. § 3142(g)(3)(A). The second category questions whether "at the time of the current offense or arrest, the person was on probation, on parole, or other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law." 18 U.S.C. § 3142(g)(3)(B).

Defendant has strong family ties to the district which include one child, his father, and his grandmother in Flint. ECF No. 84, PageID.354–355. He also has community ties in Georgia, where his mother and two siblings reside; Defendant lived in Georgia between 2004-2011 and 2015-2016 as well. Pretrial Services Report, at 1. At the time of his arrest in January 2018, Defendant resided in co-defendant's Detroit home on Cheyenne Street. ECF No. 89, PageID.379. He was previously homeless for approximately one year. Pretrial Services Report, at 1. Defendant asserts that his grandmother is willing to allow him to reside with her. ECF No. 84, PageID.355.

Nevertheless, Defendant has a minimal employment history. He has worked sporadically as a repair technician for bowling alleys in the Detroit area. *Id.* at PageID.354. He claims he can work at Sister's Spit Shine should he be released on bond. *Id.* He offers no details beyond this assertion.

Defendant has a substance abuse history beginning at age 14, as well as an extensive criminal history. As detailed above, Defendant's criminal history includes convictions for obstructing police, multiple drug offenses, domestic violence, and receipt of stolen property. Despite being repeatedly convicted and sentenced to imprisonment or probation, Defendant resumed drug-related activities. Defendant was in fact on probation for drug offenses, as well as for receiving stolen property charges, at the time of his arrest in the instant case. ECF No. 89, PageID.379.

Based on the totality of the record before this Court, Defendant's history and characteristics suggest this third factor weighs in favor of his continued detention.

### 4. Nature and Seriousness of Danger Posed by Defendant's Release

The fourth and final factor demands that the Court consider the "nature and seriousness of the danger to any person or the community that would be posed by [Defendant's] release." 18 U.S.C. § 3142(g)(4). The Court must "look to more than whether or not the defendant himself has been guilty of physical violence," but also to the safety of the community as a whole. *United States v. Vance*, 851 F.2d 166, 169 (6th Cir. 1988). Here, for all the reasons set forth above, the Court finds that Defendant would pose a danger to the community and to potential witnesses in the instant case if released. Furthermore, the Court weighs strongly the recommendation from Pretrial Services, which concluded that there was no condition or combination

of conditions that could reasonably assure Defendant's appearance as required and the safety of the community.

All four § 3142(g) factors weigh in favor of Defendant's detention. While Defendant does offer a plan for supervised release, the totality of the record before the Court demonstrates that there are no conditions or combination of conditions that will reasonably assure his appearance and safety of the community.

### B. Due Process

This Court must next consider whether Defendant's pretrial detention violates the Due Process Clause of the Fifth Amendment. In addition to maintaining that he poses neither a danger to the community nor a flight risk, Defendant argues that his pretrial detention amounts to "punitive detention" given the delays and multiple superseding indictments in this case. ECF No. 84, PageID.349. Defendant exclusively relies on one case to support this argument. *Id.* at PageID.357–358. In *United States v. Nagi*, the Sixth Circuit determined that Defendant Nagi's continued pretrial detention—two and a half years—violated his constitutional right to due process. ECF No. 996, PageID.2544. The Court in *Nagi* determined that multiple factors weighed in favor of defendant's release, including the fact that co-defendants with much more serious charges of murder were released on bond to other states. *Id.* at PageID.2545; *see also* ECF No. 84, PageID.357.

The factors adopted by this Circuit to determine whether a term of pretrial detention qualifies as constitutionally excessive fail to weigh in Defendant's favor here as they did in *Nagi*, though. For the reasons explained below, Defendant's detention does not violate due process.

1. **Length of Detention**

The length of pretrial detention is not dispositive, and will, by itself, rarely offend due process. *El-Hage*, 218 F.3d at 79 (quoting *United States v. Millan*, 4 F.3d 1038, 1044 (2d Cir. 1993)). Defendant's due process argument here relies almost entirely on the length of his pretrial detention. ECF No. 84, PageID.349, 352. Courts have found lesser periods of detention to be a violation of due process. *See, e.g.*, *United States v. Melendez-Carrion*, 790 F.2d 984, 1004 (2d Cir. 1986) (finding Defendant's detention of eight months without bail on the grounds of dangerousness violated due process). But courts have also found lengthier periods that were not in violation of the Fifth Amendment. *See, e.g.*, *El-Hage*, 213 F.3d at 79–81 (finding Defendant's detention period of 30–33 months did not violate due process where the prosecution bore little responsibility for delay; trial preparation was time-consuming; and the charges were grave). The Court must therefore look to the other three factors.

## 2. Government's Responsibility for Trial Delay

The Court must next assess the Government's responsibility for delay. There is no assertion that the Government's decision to file three superseding indictments was vindictive or sought in retaliation for Defendant's exercise of his legal rights. Defendant instead cites generally to Government's "delay in bringing the case to trial." ECF No. 84, PageID.352. However, Defendant does indicate that the Government has "failed to comply with [his] numerous requests for discovery materials pertaining to the new indictment(s)." *Id.* at PageID.349. The Government did not address this claim in its Response.

## 3. Gravity of Charges and 4. Strength of Evidence

The remaining due process factors—charge gravity and evidence warranting detention—weigh against a violation. The Supreme Court has upheld the Bail Reform Act against substantive due process challenges based on the "legitimate regulatory aims" of the Act. *Salerno*, 481 U.S. at 747. Here, as discussed in the § 3142(g) analysis, the factors weigh in favor of Defendant's continued detention.

Defendant faces additional and more aggravated charges since his detention hearing in November 2018. Count 1 of the Fourth Superseding Indictment—conspiracy to distribute controlled substances—alone creates a statutory presumption of detention. 18 U.S.C. § 3142(e)(3)(A). These elements, combined with the analysis above, can establish that pretrial detention is rationally connected

to the regulatory interest of community safety and is not excessive in relation to that legitimate purpose. *Salerno*, 481 U.S. at 747. Continued detention here is protective of the community and other persons, not punitive toward Defendant.

### V. CONCLUSION

For the reasons articulated above, the Court will DENY Defendant's Motion for Bond [#84].

IT IS SO ORDERED.

Dated: October 1, 2019

s/Gershwin A. Drain
HON. GERSHWIN A. DRAIN
United States District Court Judge

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, October 1, 2019, by electronic and/or ordinary mail.

s/Teresa McGovern
Case Manager